[No. 42071.  En Banc.  June 8, 1972.]

FAYE L. BROW, *Appellant*, v. MUTUAL OF OMAHA INSURANCE COMPANY, *Respondent*.

*Heiman & Samboni* and *Donald R. Douglas,* for appellant.

*Koenigsberg, Brown, Sinsheimer & Meltzer,* by *William W. Brown,* for respondent.

WRIGHT, J.—The question before the court on this appeal is a narrow one and strictly a matter of procedure.

Faye L. Brow, the appellant, is the widow of William J. Brow. On June 4, 1967, appellant and her husband went to the Seattle-Tacoma International Airport from whence Mr. Brow left for Florida on a trip from which he never returned. They went to a counter maintained by respondent for the sale of insurance policies. An agent of respondent was in charge of the counter.

Mr. Brow bought an insurance policy. Within 10 minutes after that Mr. Brow left on his plane. Appellant kept the policy. On June 11, 1967, Mr. Brow was killed during a hydroplane race in Florida when the boat he was operating, Miss Budweiser, capsized and threw him out.

Following the death of William J. Brow, appellant filed a claim with respondent. The claim was rejected. This action followed.

At the trial appellant was the only witness. She testified her husband asked several times if the policy would cover him no matter what he was doing. The agent at the airport counter told him it would. Appellant testified the matter of full coverage was gone over three or four times.

Respondent relies on two matters for defense. First, it contends the policy covered only travel accidents because a "no" was written on the application for the item "Other accidents (Nonoccupational)." The mark following that item was actually illegible on the carbon copy which was in evidence. Second, it contends the accident was occupational, and, hence, would not be covered in any event. Mr. Brow was a distributor for Vita-Milk Dairy. Several times each year he drove a hydroplane in races, for which he received 25 per cent of the winnings, his expenses, and wages for time he spent working on the boat.

After appellant's testimony, the trial court dismissed. We are committed to the rule that upon a motion to

dismiss at the end of plaintiff's case, the court, in a jury case, must view the evidence and reasonable inferences therefrom in the light most favorable to plaintiff. *Gaasland Co. v. Hyak Lumber & Millwork, Inc.,* 42 Wn.2d 705, 257 P.2d 784 (1953). In a nonjury case the court may weigh plaintiff's evidence and enter findings of fact and conclusions of law based thereon. *Lambuth v. Stetson & Post Mill Co.,* 14 Wash. 187, 44 P. 148 (1896); *Hodges v. Gronvold,* 54 Wn.2d 478, 341 P.2d 857 (1959); *Maynard Inv. Co. v. McCann,* 77 Wn.2d 616, 465 P.2d 657 (1970). The trial court may likewise rule as a matter of law at the end of plaintiff's case.

If the trial court weighs the evidence, a reviewing court will accept findings of fact supported by substantial evidence. *Enterprise Timber, Inc. v. Washington Title Ins. Co.,* 76 Wn.2d 479, 457 P.2d 600 (1969). If the trial court has ruled as a matter of law, then the reviewing court will consider whether the law was correctly stated and applied. *N. Fiorito Co. v. State,* 69 Wn.2d 616, 419 P.2d 586 (1966).

In the instant case the court entered findings of fact and conclusions of law. That is generally regarded as a strong indication that the court did weigh the evidence. It is important to a reviewing court to know which way the trial court acted.

We said in *N. Fiorito Co. v. State, supra:*

> If findings of fact are entered, and if, for any reason, it cannot readily be determined therefrom which approach the trial court adopted in ruling upon the motion before it, we look to the trial court's oral or memorandum decision for guidance.

After examining both the oral opinion and the findings of fact, it clearly appears the trial court did weigh the evidence. There are reasonable inferences from the record to support the decision of the trial court. We affirm.

HAMILTON, C.J., FINLEY, NEILL, and STAFFORD, JJ., concur.

HUNTER, J. (dissenting)—I dissent. There are only two issues in this case. (1) Was the entry of "no" instead of

"yes" in answer to item No. 5 under the following coverages in the policy a mistake of fact:

Coverages

1. SCHEDULED AIRLINES ....................Yes
2. AIRPORT PREMISES; AIRPORT BUS AND LIMOUSINE SERVICE ....................Yes
3. COMMON CARRIER ......................Yes
4. AUTOMOBILE AND OTHER SPECIFIED AIRCRAFT .............................Yes
5. OTHER ACCIDENTS (NONOCCUPATIONAL).....No.

(2) Was the operation of the hydroplane by the deceased occupational.

For the purposes of this case, we are concerned only with the first issue as the court did not reach the second. The record in this regard shows the following colloquy between plaintiff's counsel and the court:

> MR. DOUGLAS: . . . You haven't even ruled on the question of whether or not this was an occupation or not an occupation. THE COURT: *Because I am not coming to that. I am assuming for the sake of your argument that this would not have been an occupation.*

(Italics mine.)

Under this assumption of the court, in the event "yes" had been entered by the insurance representative instead of "no" in answer to item No. 5 of the coverages, the decedent would have been covered at the time of his death under the policy.

The trial court held the following in its oral ruling:

> THE COURT: Mr. Douglas, I am now making my ruling. I feel you have not sustained the burden of proof, of proving any mutual mistake in this situation. I think that the only thing that you have proven is some general statement that Mr. Brow wanted a policy that would cover him no matter what he was doing.
>
> This is so ambiguous as not to be able to establish by the quantum of proof necessary that there was a mistake by the scrivener in the type of coverage which was furnished in this policy because it would require the Court to infer from a general conversation, in effect, that a

mistake was made and I just do not believe that this is the quantum of proof necessary to establish a prima facie case.

The pertinent findings of fact and conclusions of law entered by the trial court are the following:

### FINDINGS OF FACT

#### III

On June 4, 1967 Mr. Brow departed from the Sea-Tac Airport, by airplane to Florida. While at the Sea-Tac Airport he purchased a limited airlines insurance policy in the principal sum of $50,000 from the defendant Mutual of Omaha, at the counter in the Sea-Tac Airport. The deceased, Mr. Brow, executed and signed a written application for the policy, which was issued in accordance with the application.

#### IV

The contract by its terms did not include coverage for the injuries which occasioned the death of Mr. Brow.

#### V

The plaintiff's evidence fails to establish any basis in fact and law upon which this Court could undertake to modify or re-write the written policy in question to cover the injuries which occasioned the death of the decedent, William J. Brow.

And, from the foregoing Findings of Fact the Court now makes the following:

### CONCLUSIONS OF LAW

#### I

The claim of the plaintiff should be dismissed, with prejudice.

It appears clear from this record that the court did not weigh the evidence but, in effect, held that the evidence introduced by the plaintiff was insufficient to establish a prima facie case that the entry of "no" instead of "yes" to item No. 5 of the coverages was a mistake and the decedent for that reason was not covered under the accident life insurance policy.

I disagree with the trial court's holding. It is undisputed that the decedent, before boarding the plane for his flight to Florida, went to the counter of the defendant, Mutual of Omaha Insurance Company, at the Sea-Tac Airport, and

there asked the girl in charge whether he could get a life insurance policy to cover him no matter what he was doing in the event of his death. This was gone over with the girl in charge three or four times and she assured the decedent that she had such a policy. She then proceeded to fill out the policy which would have covered the accidental death of the decedent, had she entered the word "yes" in answer to item No. 5 instead of "no." The testimony of Mrs. Brow, the decedent's wife, was as follows:

> A. He told her he wanted a policy that would cover him no matter what he was doing. He says, "Do you have that type of policy?" She says, "Yes, we do," and he said this is what he wanted. He wanted a policy no matter what he was doing, no matter in an airplane or anything, this is the type of policy he wanted; that he would be well covered. Q. What did she reply to this inquiry? A. And she said yes, they do have that policy, and he said, "This is what I want." Q. Then did he purchase that? A. Then he said that's what he wanted. Q. Then what did she say? A. Then she gave us the policy. Q. Did she say anything else? How long a period of time did this whole transaction take? A. It was probably fifteen, twenty minutes before we got away from the counter. Q. How many times during this fifteen or twenty minutes did either the agent or your husband, Bill, refer to the fact that he was purchasing full coverage for any eventuality? How many times did you hear this mentioned? A. Three or four times. When we walked away after he signed it he said, "Now are you sure?" and she said yes. Q. She said they did have that type of policy? A. Yes.

Moreover, Mrs. Brow's testimony is undisputed that the agent of the defendant insurance company, a Mr. Arnold, who advised her that her husband was not covered under the policy, admitted the insurance company had problems in training their help properly in view of their large turnover, and that the girl could have made a mistake. Nor was it claimed by Mr. Arnold that the premium would have been more had the asserted mistake not been made.

I am satisfied that the undisputed and unrebutted testimony in this record was sufficient to establish a prima facie

case that a scrivener's error had been made in the answer to item No. 5. The trial court, therefore, erred in dismissing the plaintiff's case at the close of the evidence.

I would reverse the trial court and grant the plaintiff a new trial.

ROSELLINI and HALE, JJ., concur with HUNTER, J.