848 P.2d 1137

**Pamela D. FITZGERALD,**
**Claimant–Appellee,**

v.

**OPEN HANDS, Employer, and United States Fidelity & Guaranty Company, Insurer, Respondents–Appellants.**

**No. 13741.**

Court of Appeals of New Mexico.

Feb. 18, 1993.

P.A., Albuquerque, for respondents-appellants.

Linda Martinez–Palmer, Daniel J. O'Friel, Law Offices of Daniel J. O'Friel, Ltd., Santa Fe, for claimant-appellee.

## OPINION

PICKARD, Judge.

This workers' compensation case involves the proper legal interpretation and application to the facts of the statutes defining "impairment" and "disability" and limiting the amount of compensation benefits payable. The accidental injury took place on November 28, 1988, and the governing law is that in effect from 1987 to 1991. The specific provisions at issue are NMSA 1978, Sections 52–1–24, 52–1–25, and 52–1–41 (Repl.Pamp.1987).

Worker was a psychiatric nurse at the New Mexico State Penitentiary in Santa Fe when she was brutally beaten by a psychotic prisoner. Worker's main physical injuries were to her face and head. These injuries were treated by doctors and dentists, including a plastic surgeon, on an intermittent basis from the date of the accident until December 1989. In addition to her physical injuries, worker sustained post-traumatic stress disorder from which she was still suffering at the time of the hearing.

The workers' compensation judge found that worker was totally temporarily disabled from the date of the accident until March 15, 1991. The judge also found that worker was totally permanently disabled solely from her secondary mental impairment from March 15, 1991, on. The compensation order awarded worker 119 weeks and 4 days of total disability benefits for the secondary mental impairment commencing on March 15, 1991, based on a finding that worker's disability produced by the physical impairment lasted 119 weeks and 4 days from November 28, 1988, to March 15, 1991. The judge also awarded $9000 in attorney fees.

Employer appeals, raising four issues: (1) whether the judge misinterpreted the law limiting compensation benefits for sec-

Timothy R. Briggs, Thomas R. Mack, Miller, Stratvert, Torgerson & Schlenker,

ondary mental impairment and lacked evidence on which to base her interpretation of the law; (2) whether there was sufficient evidence of total disability; (3) whether medical records were properly admitted into evidence when they were not disclosed in a timely fashion; and (4) whether the attorney fees were excessive. We address the second and third issues summarily, holding that there was substantial evidence of total disability and that employer has shown no error in the admission of medical records. We do not address the fourth issue in light of our disposition of the first issue. We reverse on the first issue and remand for a corrected award of compensation benefits and redetermination of attorney fees in light of the new award.

■ While conceding that worker is totally disabled as a psychiatric nurse, employer contends that worker is not totally disabled because she could perform as a nurse in other fields and was in fact working in client development and as a group leader in an Outward Bound-type of program at the time of the hearing. The evidence, however, was that, due to her psychological state, worker lacked confidence in her nursing abilities, could not care for others, and did not maintain continuing education in nursing. The fact that worker was able to work at the program does not, under the facts of this case, establish that worker was not totally disabled. In the year prior to the hearing, this job was extremely part-time, and worker earned only $600 from it. While there was evidence that the reason worker did not work more for this particular program was a lack of clients, the judge could have inferred that worker would not have been able to handle a full client base due to her psychological state. On the whole record, therefore, see Tallman v. ABF (Arkansas Best Freight), 108 N.M. 124, 767 P.2d 363 (Ct.App.), cert. denied, 109 N.M. 33, 781 P.2d 305 (1988), there was substantial evidence that worker was totally disabled. See Smith v. City of Albuquerque, 105 N.M. 125, 130–32, 729 P.2d 1379, 1384–86 (Ct.App.1986); cf. Dodrill v. Albuquerque Utilities Corp., 103 N.M. 737, 713 P.2d 7 (Ct.App.1985) (recognizing "odd-lot" doctrine).

Employer alleges error in the judge's admission of worker's medical records. However, employer's brief does not cite any reference to the transcript or record where this issue was raised below. Under these circumstances, no error is shown. See State v. Martin, 90 N.M. 524, 527, 565 P.2d 1041, 1044 (Ct.App.), cert. denied, 90 N.M. 636, 567 P.2d 485 (1977).

■ This brings us to the major issue on appeal, whether the judge erred in her determination of the duration of worker's benefits. In order to evaluate this issue, we set out the pertinent statutory provisions in relevant part. Section 52–1–24 states:

As used in the Workers' Compensation Act ...:

A. "impairment" includes physical impairment, primary mental impairment and secondary mental impairment;

B. "primary mental impairment" means a mental illness arising from an accidental injury arising out of and in the course of employment when the accidental injury involves no physical injury ...; and

C. "secondary mental impairment" means a mental illness resulting from a physical impairment caused by an accidental injury arising out of and in the course of employment.

Section 52–1–25(A) states:

As used in the Workers' Compensation Act ..., "total disability" means an impairment to a worker resulting by reason of an accidental injury arising out of and in the course of employment which prevents the worker from engaging, for remuneration or profit, in any occupation for which he is or becomes fitted by age, training or experience.

Section 52–1–41(A) states:

For total disability, the worker shall receive, during the period of that disability, ... [a specified calculation of benefits] a week but in no event to exceed a period of seven hundred weeks, except for total disability resulting from:

(1) primary mental impairment in which case the maximum period is one hundred weeks; or

(2) secondary mental impairment in which case the maximum period is the maximum period allowable for the disability produced by the physical impairment or one hundred weeks, whichever is greater.

Although worker has not cross-appealed, the parties' arguments and the judge's findings show three different ways of construing these statutes. Worker's construction appears to be that it is the disability that governs, and as long as there is a disability (as opposed to an impairment), worker is entitled to full disability payments. Employer's construction is that Section 52–1–41(A)(2) allows compensation payments for as long as the physical disability is present; if the physical disability lasts less than 100 weeks, then a person who is totally disabled by secondary mental impairment can receive compensation payments for the balance of the 100 weeks and no more. The judge's construction is that Section 52–1–41(A)(2) requires a determination of when the physical disability ends; then for the period during which the worker is disabled solely by the secondary mental impairment, that worker is entitled to the greater of 100 weeks of compensation payments or the number of weeks of physical disability. According to the judge, both of these would be payable only after the payments for the disability which included physical disability ended. Thus, in this case, because the judge found that worker's physical disability ended on March 15, 1991, and because the period from the accident on November 28, 1988, to March 15, 1991, was 119 weeks and 4 days, worker was entitled to another 119 weeks and 4 days of compensation benefits beginning on March 15, 1991.

We find that worker's construction of the applicable statutes ignores much of the statutory language. Worker's construction would read the word "impairment" out of the definition of disability in Section 52–1–25. According to that section, disabilities are based on impairments that prevent work. See also Douglass v. State Regulation & Licensing Dep't, 112 N.M. 183, 185, 812 P.2d 1331, 1333 (Ct.App.), cert. denied, 112 N.M. 77, 811 P.2d 575 (1991). Impairments, then, are defined in Section 52–1–24.

These include physical impairments, primary mental impairments, and secondary mental impairments. At the time of the hearing, it was conceded that worker no longer suffered any physical impairment. Worker never suffered a primary mental impairment because that, by definition, is a mental impairment without physical injury, and it was undisputed that worker's beating resulted in physical injury. Thus, at the time of the hearing, worker was disabled by a secondary mental impairment and, accordingly, was subject to the limitation of Section 52–1–41(A)(2).

As between employer's construction and the judge's construction, we understand how the judge could have found both to be plausible on a first reading of Section 52–1–41 alone. One way she could have decided which construction to adopt would be to adopt the one pursuant to which this concededly disabled worker would get benefits. However, NMSA 1978, Section 52–5–1 (Repl.Pamp.1987) counsels that the rule of "liberal" construction of the "remedial" workers' compensation statute is not to be used. See also Jensen v. New Mexico State Police, 109 N.M. 626, 629, 788 P.2d 382, 385 (Ct.App.), cert. denied, 109 N.M. 563, 787 P.2d 1246 (1990). Thus, to the extent the judge may have applied a rule of liberal construction to arrive at the result she did, she erred in doing so.

Section 52–5–1 also counsels that all benefit claims are to be decided on their merits with the interests of both the employee and the employer to be equally favored. What are those merits? First, we recognize that by enacting the "new" workers' compensation act, under which this case must be decided, the legislature clearly intended to restrict coverage for mental injuries. Douglass, 112 N.M. at 185, 812 P.2d at 1333. This is evidenced both by the restrictive circumstances under which mental injuries are compensated at all, see Douglass v. State Regulation & Licensing Dep't; Jensen v. New Mexico State Police, and by the limitations contained in Section 52–1–41 on the duration of compensation.

Second, carrying the judge's reading of Section 52–1–41 to its logical conclusion will show that her construction could not

have been what the legislature had in mind because it would allow workers disabled by mental impairments a longer period of compensation benefits than other disabled workers. According to the judge's construction, a worker who has a secondary mental impairment and is disabled by the physical impairment for 700 weeks but who remains mentally impaired thereafter could collect 1400 weeks of compensation benefits. Because we are confident that the legislature did not intend this result, we find employer's reading of the applicable statute to be the most reasonable. *See Gutierrez v. City of Albuquerque,* 96 N.M. 398, 400, 631 P.2d 304, 306 (1981) (when statute is susceptible to two constructions, court will not adopt one that will render statute's application absurd or unreasonable).

Thus, in cases of this nature, workers' compensation judges must first determine the maximum period allowable for a worker's disability produced by the physical impairment. In this case, the judge appeared to find that that was 119 weeks and 4 days. However, there was no evidence that worker's physical impairment, much less any disability based on it, lasted that long. It was undisputed that worker's last visit to a doctor for physical problems was in December 1989, less than fifty-seven weeks after her accidental injury.

We therefore reverse and remand to the Workers' Compensation Administration for the judge to make a finding concerning the maximum period allowable for any disability suffered by worker produced by the physical impairment. The judge shall then allow worker compensation from November 28, 1988, for that period or 100 weeks, whichever is greater. Because the amount of compensation worker will receive will necessarily be less in light of our disposition, the judge shall also recalculate appropriate attorney fees.

IT IS SO ORDERED.

MINZNER, C.J., and BIVINS, J., concur.