912 P.2d 831

**Nina E. PETERSON, Worker–Appellant,**

**v.**

**NORTHERN HOME CARE and Mountain States Mutual Casualty Company, Employer/Insurer–Appellee.**

**No. 16521.**

Court of Appeals of New Mexico.

Feb. 5, 1996.

Jane Bloom Yohalem, Nancy Kantrowitz, Law Offices of Simon & Oppenheimer, Santa Fe, for Appellant.

Daniel E. Gershon, Baca, Coryell, Gershon & Hall, P.A., Santa Fe, for Appellee.

*OPINION*

PICKARD, Judge.

1. Worker appeals an order of the workers' compensation judge. The order found that (1) Worker was in an accident at such a time that the 1991 Workers' Compensation Act, NMSA 1978, §§ 52–1–1 to –70 (Repl. Pamp.1991) (effective January 1, 1991), applied; (2) Worker was temporarily totally disabled for slightly over 89 weeks, at which point she reached maximum medical improvement; (3) following the date of maximum medical improvement, Worker has a psychological condition and disability, but no physical impairment; and (4) Worker is not entitled to disability benefits because the psychological condition lacks a numerically rated impairment.

2. Worker's appeal challenges the finding of no physical impairment, the failure to award disability benefits for the psychological condition, and a finding relating to calculation of disability that was contrary to the parties' pretrial stipulation. Employer does not controvert Worker's last issue, but contends that substantial evidence supports the finding of no physical impairment, that substantial evidence would support a finding of no disability whatsoever, that Worker's recovery from the physical impairment precludes recovery of benefits for secondary mental impairment, and that Worker did not prove any rating for her psychological impairment alone and thus is not entitled to benefits.

3. We affirm in part and reverse in part. Specifically, we hold that the finding of no physical impairment was supported by substantial evidence, that Worker is entitled to approximately 11 weeks of benefits for secondary mental impairment, and that on remand the judge should calculate those benefits using the nonnumerical descriptions in the AMA Guidelines and using the parties' stipulation. Our disposition of these issues makes it unnecessary to decide Worker's constitutional challenges to the statute's method of determining disability benefits.

FACTS

4. Worker was a home health care worker when she broke her foot in a job-related

accident. In the pre-trial order, the parties stipulated that the physical capacity of Worker's job was "heavy." *See* § 52–1–26.4. The foot injury affected Worker's leg, back, and mental health and resulted in total temporary disability for 89 weeks.

5. Worker was treated by Dr. Jones for the orthopedic symptoms and by Dr. Naimark, a psychologist, for the psychological problems and pain. Both doctors saw no reason not to believe Worker's complaints of pain. Employer, however, introduced testimony, including videotape, of Worker's activities, particularly that of selling produce at a local farmers' market, that would cast doubt on her complaints of pain and inability to do physical activities.

6. Dr. Jones testified that Worker reached maximum medical improvement, *see* § 52–1–24.1, and he gave Worker an impairment rating of 5% based on the status of Worker's back and the pain related to her altered gait, *see* § 52–1–24(A). He testified that the fact that Worker was selling produce at the market would not affect his impairment rating, although he also said that his impairment rating was based in part on Worker's subjective complaints.

7. Dr. Naimark testified that Worker reached maximum medical improvement for her psychological condition. Consistent with the AMA Guidelines, he did not give her a numerical impairment rating for her pain disorder. He said that her impairment was mild to moderate, depending on the amount of pain she suffered at the particular time.

8. The judge found that Worker reached maximum medical improvement for all conditions. He also found that, in light of her marketing activities, Worker no longer had a physical impairment after maximum medical improvement. The judge found that Worker suffers a continuing psychological condition that is disabling, but "Worker is not entitled to permanent partial disability benefits. This is because the psychological condition lacks a numerically rated impairment[.]" The judge also found that the physical capacity of Worker's job as a home health care worker was "medium."

## PHYSICAL IMPAIRMENT

■ 9. Worker contends that, because Section 52–1–24(A) requires the judge to base an impairment rating on medical and scientific evidence and because only one doctor testified on the issue of rating Worker's physical impairment and he rated it at 5%, the judge was required to accept that rating. We disagree.

10. In an analogous situation, we have recognized that a doctor's opinion is only as good as the facts upon which he or she bases it. Thus, although Section 52–1–28 requires expert testimony on the issue of causation when it is contested and our cases hold that uncontradicted testimony on that issue is binding on the trial court, *Hernandez v. Mead Foods, Inc.*, 104 N.M. 67, 70, 716 P.2d 645, 648 (Ct.App.1986), we have also held that there are exceptions to the rule, *id.* at 70–71, 716 P.2d at 648–49, and one such exception is where the facts providing the basis for the expert's testimony are not worthy of belief, *see Nunez v. Smith's Management Corp.*, 108 N.M. 186, 189–90, 769 P.2d 99, 102–03 (Ct.App.1988). In this case, there was evidence that cast doubt on Worker's reports of pain to Dr. Jones. Accordingly, the judge was entitled to discount Dr. Jones' establishment of a 5% impairment rating for Worker and was entitled to find that Worker had no physical impairment.

## IMPAIRMENT RATING FOR PSYCHOLOGICAL CONDITION

■ 11. Worker contends that the judge erred in refusing to award permanent partial disability benefits on the basis that Worker's condition lacked a numerical rating. We agree.

12. Initially, Employer argues that the same evidence that caused the judge to find that Worker did not have a physical impairment provided substantial evidence for the judge to have found no impairment whatsoever. The problem with Employer's argument is that it is not what the judge found. The judge made detailed findings that included finding that Worker did continue to suffer from a psychological condition and that she did have a permanent disability. The judge's conclusion, quoted above, is quite specific that disability benefits were not awarded be-

cause there was no numerical rating for Worker's psychological impairment. Under these circumstances, we do not uphold the judgment based on factual findings contrary to those made by the judge. *See Worland v. Worland,* 89 N.M. 291, 293–94, 551 P.2d 981, 983–84 (1976) (judgment must be supported by findings).

13. Employer next argues that Worker cannot have a secondary mental impairment because, by definition, Worker must have a current physical impairment to have a secondary mental impairment. Employer's contention is based on a misreading of the statute. Although Section 52–1–24(C) defines secondary mental impairment as a mental illness "resulting from" a physical impairment, it does not require a continuation of the physical impairment. It simply requires the physical impairment to trigger the mental illness.

14. This is clear from a reading of the portion of the statute that governs the duration of benefits. We read the Workers' Compensation Act as a harmonious whole to give each provision effect. *See State ex rel. Klineline v. Blackhurst,* 106 N.M. 732, 735, 749 P.2d 1111, 1114 (1988). Section 52–1–42(A)(4) allows disability benefits to be paid for secondary mental impairment for the longer of (1) the maximum period allowable for the disability produced by the physical impairment or (2) one hundred weeks. If, for example, the period allowable for the disability caused by the physical impairment is only two weeks because the physical impairment is cured, a worker still may collect benefits for secondary mental impairment. *See Fitzgerald v. Open Hands,* 115 N.M. 210, 213–14, 848 P.2d 1137, 1140–41 (Ct.App. 1993). Thus, in this case, because Worker was paid total temporary disability benefits for approximately 89 weeks after which the judge found she no longer had any physical impairment, Worker is entitled to benefits for secondary mental impairment for approximately eleven weeks under Section 52–1–42(B).

15. Employer next argues that Worker never established any numerical rating for her secondary mental impairment according to the statutory requirements. Those requirements are explained in Section 52–1–24(A):

"impairment" means an anatomical or functional abnormality existing after the date of maximum medical improvement as determined by a medically or scientifically demonstrable finding and based upon the most recent edition of the American medical association's guide to the evaluation of permanent impairment or comparable publications of the American medical association.

■ 16. Dr. Naimark testified that the American Medical Association discourages, if not prohibits, the use of percentages to rate mental impairments. He testified that, under either the third edition of the AMA Guides to the Evaluation of Permanent Impairment or the fourth edition, both of which were the same as far as Worker's impairment was concerned, Worker had a mild impairment when she was not experiencing severe levels of pain and a moderate impairment when she was experiencing severe levels of pain. A mild impairment is an impairment that is compatible with most useful functioning while a moderate impairment is compatible with some, but not all, useful functioning.

17. Employer does not argue that the statute exhibits an intent not to compensate for mental impairment on the ground that mental impairment is not numerically rated in the AMA Guides. Nor do we believe that such an argument would have merit in light of the fact that several statutory provisions direct that compensation benefits be paid for mental impairment. *See Roberts v. Southwest Community Health Servs.,* 114 N.M. 248, 253–54, 837 P.2d 442, 447–48 (1992) (statutes are interpreted to give effect to all portions of them, and not to render some portions nullities).

18. Employer does argue that Worker never offered any evidence under comparable publications, such as are allowed by the statute, and never inquired as to whether such publications existed. The statute refers only to publications of the AMA. Dr. Naimark testified that the AMA discourages, if not prohibits, numerically rating mental impairments. Thus, Worker established that there

were no publications that would satisfy Employer's demand for numerical ratings under comparable publications. Accordingly, we agree with Worker that the judge should have given an impairment rating based on the doctor's explanation of the AMA nonnumerical rating. *Cf. generally Lucero v. Smith's Food & Drug Ctrs., Inc.,* 118 N.M. 35, 38, 878 P.2d 353, 356 (Ct.App.) (where particular statutory section did not require benefits to be measured in terms of impairment according to AMA Guides, judge could measure benefits in terms of loss of use according to statutory language), *cert. denied,* 118 N.M. 90, 879 P.2d 91 (1994).

PHYSICAL CAPACITY MODIFIER

19. Worker contends that the judge was prohibited from finding that the physical capacity of the job of home health care worker was "medium" when the parties had stipulated that it was "heavy," *see* § 52–1–26.4, at least without notice and opportunity to challenge the non-use of the stipulation or introduce evidence to support the stipulation. While parties may try issues by consent, even when there is a stipulation, *see Garcia v. Homestake Mining Co.,* 113 N.M. 508, 511, 828 P.2d 420, 423 (Ct.App.), *cert. denied,* 113

N.M. 488, 827 P.2d 1302 (1992), Employer does not contend that the issue of physical capacity was tried and does not defend the judge's finding. Under these circumstances, we agree with Worker that the judge's finding of "medium" capacity was error.

CONCLUSION

20. The judge's order denying compensation benefits for physical impairment is affirmed, and his order denying compensation benefits for mental impairment is reversed. This matter is remanded for a determination of the applicable benefits due Worker for her secondary mental impairment for the appropriate number of weeks.

21. **IT IS SO ORDERED.**

APODACA, C.J., and HARTZ, J., concur.